[No. 1367.   Decided June 13, 1894.]

A. W. ROGERS, *Respondent*, v. THE CITY OF SPOKANE, *Appellant*.

ACCORD AND SATISFACTION — FAILURE OF PERFORMANCE.

In an action against a city for the recovery of damages for injuries received through the city's negligence, an answer alleging that plaintiff agreed to accept a certain sum from the defendant in full discharge and satisfaction of his claim, which sum defendant agreed to pay, and that thereafter the city council of defendant directed the issuance of warrants payable from its treasury for said sum, which were ready for delivery to plaintiff, is not sufficient as a plea of accord and satisfaction, since it appears from the answer itself that it was not the city's promise to pay that was to be received in satisfaction, but the payment of the sum agreed upon, and that this sum had neither been paid nor tendered at the time of the accord.

*Appeal from Superior Court, Spokane County.*

*James Dawson*, for appellant.

*Turner, Graves & McKinstry*, for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—This is an action by the respondent against the city of Spokane, for damages received by re-

spondent while acting as a duly authorized scavenger for said city, in removing the contents of a cesspool and disposing of the same in the Spokane river from the city dump structure, by reason of respondent and his team being precipitated from said dump structure into the Spokane river on account of the alleged unsafe structure maintained by the city. The complaint contained the usual allegations of negligence on the part of the city and damages suffered by respondent. The answer was a denial of the negligence of the city in maintaining said structure, an allegation of contributory negligence on the part of the respondent, and an affirmative defense which was as follows:

"Defendant, for a further affirmative defense and answer to said complaint, alleges that, before the commencement of this action, to wit, on the —— day of October, A. D. 1893, the said plaintiff agreed to accept the sum of three hundred and forty-three and $\frac{90}{100}$ dollars, in full discharge and satisfaction of said claim on a compromise thereof, and to execute to the defendant a release and discharge therefrom, and that the said defendant then and there agreed to pay said plaintiff said sum in full satisfaction and discharge of said claim as a compromise thereof. That on, to wit, the 27th day of October, A. D. 1893, the said defendant, at a regular meeting of its council, by its said council empowered and directed its comptroller to issue to said plaintiff warrants for said sum, payable from its treasury, and the same are now ready to be delivered to said plaintiff."

On the trial of the cause the following testimony was offered:

"*Question:* Now, Mr. Patterson, will you state whether there was any agreement made between the finance committee and the city council to compromise the claim of Mr. Rogers; if so, state what. (Objected to by counsel for plaintiff as immaterial, irrelevant and incompetent.)

"MR. DAWSON: I propose to prove by this, your honor, that they actually went into negotiations to settle this, and the amount was agreed on, and that Rogers agreed to accept that amount, and upon that agreement of Rogers it

was presented to the city council and the city council passed upon it and directed the comptroller to draw warrants for that amount, and Mr. Rogers agreed to come back and get the amount agreed upon; he never did come back, but brought this suit; the amount agreed upon was itemized and he agreed to accept that as a compromise of this case."

The objection to the introduction of this testimony was sustained by the court, so that it will be seen that this case squarely raises the law of accord and satisfaction. This is one of the most difficult branches of the law to determine, as the authorities seem to be somewhat conflicting and the circumstances under which the questions arise are so diversified and numerous.

An accord and satisfaction is defined to be:

"An agreement between two persons, one of whom has a right of action against the other, that the latter should do or give, and the former accept, something in satisfaction of the right of action different from, and usually less than, what might be legally enforced. When the agreement is executed, and satisfaction has been made, it is called 'accord and satisfaction.'" Black's Law Dictionary, p. 16.

Another definition is:

"A satisfaction agreed upon between the party injuring and the party injured which, when performed, is a bar to all actions upon this account."

And another:

"A settlement of a dispute or the satisfaction of a claim, by an executed agreement between the party injuring and the party injured."

The definition given by Rapalje & Lawrence's Law Dictionary is as follows:

"An accord is an agreement between two or more persons, one of whom has a right of action against the other, that the latter shall render and the former accept something in satisfaction of the right of action, etc. If the

accord is carried out by the payment, delivery or perform-
ance and acceptance, the arrangement is called an 'accord
and satisfaction' (in the old books sometimes an 'accord
and execution'), and operates as a bar to the right of
action.''

In fact, the definition of all the writers and the well un-
derstood meaning of the term is substantially as expressed
above; so that it will be seen from the allegations of this.
complaint that there could have been no accord and satis-
faction, for the agreement was never executed and the pay-
ments never made.

There is another and more modern and probably better
application of this principle, which has been sustained by
the courts, viz., that an accord and satisfaction is the sub-
stitution of another agreement between the parties in satis-
faction of the former one; or probably a better definition
would be where a promise to do a thing is set up in satis-
faction of the prior right or claim.    And this principle, or
application of the principle, is invoked by the appellant
here to sustain his appeal.    It asserts that it does not
plead or attempt to plead accord and satisfaction, nor does
it contend that the proof was sufficient to support accord
and satisfaction; but its contention is that the matter
pleaded, if true, is good as a release of the original cause
of action and a good defense to this action, based as it is
upon the original case after once agreeing to settle the
same; that where there is a disputed liability and an un-
liquidated claim based thereon existing between the par-
ties, and the parties get together and as a compromise of
the matter in dispute agree upon an amount to be paid by
the one party to the other, when the amount is fixed and
determined and there is an agreement in the two minds
that the amount fixed to be paid is the amount due, and
the party by the compromise liable to pay agrees to pay
the same and the other agrees to accept the same, the pay-

ment of the amount so fixed becomes immediately the only matter open between them, and all claims and demands in dispute become immediately merged in the fixed sum, and both parties to the settlement and compromise are mutually bound by the settlement. We think this is a proper statement of the law, with this qualification, that it must appear that it was the new agreement to perform, which the party who was entitled to recover relied upon, instead of the performance of the agreement by the payee.

This class of cases is thus commented upon in note *f*, p. 819 of 2 Parsons on Contracts (7th ed.). After commenting upon cases of this character, including *Babcock v. Hawkins*, 23 Vt. 562, which is one of the strongest cases upholding this doctrine, the author says:

"But the rule established by these cases has made no material change in the form of the plea. It is still true that an accord without satisfaction is not good. Therefore, if a defendant intends to set up a new promise without performance in bar of an action, he must take care to aver distinctly that it was agreed that the new promise should be received in satisfaction. If he sets forth the agreement in such a manner that it appears upon the face of the plea that performance, and not the promise to perform, was to be received in satisfaction, and does not aver performance, the plea will of course be bad. This will explain several recent English cases which might seem at first sight to be at variance with what is stated in the text."

Tested by this rule, the answer in this action most certainly does not state a ground of defense so far as the plea of settlement is concerned; for it will be observed that the allegation of the affirmative answer is not that the plaintiff agreed to accept the *agreement* of the city council to pay him the sum of $343.90 in discharge and satisfaction of his claim, but that he agreed to receive the *payment* of the said sum agreed upon in satisfaction of his claim; and the three cases cited by appellant in its reply brief, in our

judgment, support the position taken by Mr. Parsons. *Goodrich v. Stanley*, 24 Conn. 613, which is the main case cited by appellant in his reply brief, holds that—

"Where it is claimed that an agreement, with promises on the one side to pay, and on the other to accept payment of an obligation, in a mode other than according to its tenor, is a satisfaction or extinguishment of such obligation, it should explicitly appear that such was the intention of the parties. Where the payee of a negotiable promissory note, both before and after its transfer, promised the maker that, if the latter would continue to labor for him, he would apply the amount of such labor in payment of the note; that, in consideration thereof, the maker promised to continue so to labor until the note should be fully paid, and the payee agreed to accept the labor in satisfaction of the note; it was held that this was only an agreement on the part of the payee to accept the labor of the maker, and not an agreement to accept merely his promise to render it in satisfaction of such note."

It was further held that—

"Where the payee, for a valuable consideration, assigned such note when over due, but the labor agreed to be performed in satisfaction of it had not been rendered at the time of the assignment, that said agreement to labor not only constituted no satisfaction of the note, but was merely an unexecuted accord, and therefore imposed no legal duty upon the maker, prior to the assignment, or consequently upon the assignee, afterward to accept such labor, even if it had been tendered."

The court, in the discussion of the case, says:

"The defendants claim that it is found that, after the note became due, and before its transfer to the plaintiff, there was a mutual agreement between Booth and Goodrich, in which the latter promised that he would continue to labor for the former, until the amount due on the note should be fully paid by such labor, and the former promised that he would accept said labor and apply it in satisfaction of the note; that it was then further agreed between them that the promise of Goodrich should be accepted by

Booth in satisfaction of the note, and that it was so accepted; and the defendants insist that this substitution of the promise of Goodrich for the note was an extinguishment, by way of accord and satisfaction, of such note, and therefore constituted a valid defense to it against Booth, and consequently against the plaintiff, his assignee. If," says the court, "Booth accepted, in satisfaction of the note, the promise of Goodrich to pay the amount due upon it in his labor, and did not merely agree to accept such labor when it should be performed, in satisfaction of it, and that was a valid promise, on which, upon its non-performance, an action would lie in favor of Booth, the authorities appear to be decisive to show that such acceptance would be an executed accord, which would be a satisfaction and extinguishment of the note."

And the court, after commenting upon cases of this character, proceeds as follows:

"In order that such an accord should be a defense to the original debt, it is necessary, in the language of PARKE B., in the case last cited (namely, *Evans v. Powis*, 1 Wels. Hurls. & Gor. 601), that the plaintiff should have 'agreed to accept the agreement itself, and not the performance of it, as a satisfaction for his debt, so that if it was not performed his only remedy would be by an action for the breach of it, and not a right to recur to the original debt.' There must be a valid agreement substituting a new cause of action in place of the old. It is not sufficient that there is a mere accord between the same parties, with mutual promises, but there must be a new agreement with a new consideration."

And the court holds that where it is the promise to perform instead of the performance that is accepted, it must explicitly appear that such was the intention of the parties, finding in this case that Booth did not agree to rely upon the mere promise of Goodrich to perform the labor, but upon the performance of the promise. And the other cases cited by appellant in its reply brief are to the same effect.

So that the rule on this question is brought down by the modern authorities to a question of intention. This intention must be gathered from the contract, and in this case the contract must be ascertained from the allegations of the answer. From the allegations of the answer it certainly does not appear that it was the intention of the respondent to accept the promise of the city of Spokane to pay him $343.90; but that it was the payment of the said sum that he relied upon to extinguish his claim. Under the pleadings in this case it plainly appears that the claim was to remain in force until the satisfaction under the new agreement, namely, the payment and acceptance of the warrant, was completed; and it may be, as was said in *Kromer v. Heim*, 75 N. Y. 578, that it was indefensible in morals for the respondent to refuse to abide by the agreement that he made, but he was under no legal obligation and had the right to enforce his claim at any time before his acceptance of the amount agreed upon.

In fact, so far as the allegations of the answer in this case are concerned, it does not even appear definitely that there was a meeting of the minds of the city council and the respondent at any time; certainly there was no tender by the council of the amount at the time that the alleged agreement was made; and whether or not there is any distinction to be made on the question of tender between a municipal corporation and an individual is a question which it is not necessary for us now to decide, as it does not appear from the answer that the date on which the plaintiff agreed to accept the amount specified was the date on which the city council empowered its comptroller to issue the said warrant to the respondent.

We think that the objection, that the answer did not state facts sufficient to constitute a defense in this particular, should have been raised by demurrer; that such is much the better and fairer practice, because, if the court

should sustain the objection, the pleader can have an opportunity to amend his pleadings to correspond with the facts.    But inasmuch as this question has not been raised by the appellant, and inasmuch as it further appears from the testimony offered that the proof was not even as strong in support of the plea at bar as the allegations of the answer, the agreement of respondent appearing to be with the finance committee, by which it was afterwards submitted to the city council for ratification, after respondent's acceptance of the same, and that no amendment could have been made in accordance with the facts, we will not disturb the judgment of the court on that ground. This disposes of the objection to the instruction of the court, that the assertion that the plaintiff agreed to receive $343.90 in consideration of his claim against the city, and that the city agreed to pay it, and ordered it paid, constituted no defense, and that it was therefore withdrawn from their consideration.

It is stated by the appellant in its brief that but two questions are presented in this case, viz. : *First*, Error of the court in excluding the evidence showing a compromise between the parties; *second*, excessive damages awarded respondent.    There is, however, some little attempt to show that if the dump was in a dangerous condition it could have been seen by any person, and that the respondent was therefore guilty of contributory negligence in not taking notice of its dangerous condition.    The testimony, however, shows that the respondent had not been acquainted with the structure when it was first made and had not had an opportunity to observe its gradual decay, or rather displacement from its original position, he never having been to the place before the 8th of August, the accident occurring on the 24th of the same month.

So far as the question of excessive damages is concerned, from the testimony of the respondent and of the physician

attending him, it would take, it seems to us, a large stretch of the imagination to conclude that such testimony showed that the verdict was founded upon the passion and prejudice of the jury.   It may have been that if this court had been sitting as a trial jury it would not have given the respondent the same amount of damages that was given by the jury.   That question having been submitted to a tribunal authorized by law to make a finding upon that subject, we are not inclined to disturb it.

The judgment will, therefore, be affirmed.

SCOTT, ANDERS and STILES, JJ., concur.

HOYT, J., dissents.